**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| PAUL PARSHALL, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. _____ ) |
| CHOICE BANCORP, INC., RODNEY R. OILSCHLAGER, AREND A. STAM, GERALD A. THIELE, MARK D. TROUDT, KENNETH J. BALDA, STEPHEN W. FORD, PAUL R. GETCHEL, MICHAEL L. HANNEMAN, DAVID A. JANSSEN, THOMAS L. MUZA, JAMES G. POESCHL, JEFFREY S. ROGGE, THOMAS N. RUSCH, JOHN F. SUPPLE III, and NICOLET BANKSHARES, INC., | ) JURY TRIAL DEMANDED ) ) CLASS ACTION ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on June 27, 2019 (the "Proposed Transaction"), pursuant to which Choice Bancorp, Inc. ("Choice" or the "Company") will be acquired Nicolet Bankshares, Inc. ("Nicolet").

2. On June 26, 2019, Choice's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Nicolet. Pursuant to the terms of the Merger Agreement, Choice's stockholders will receive 0.50 shares of Nicolet common stock for each share of Choice common stock they

own.

3. On August 23, 2019, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for October 22, 2019.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Choice common stock.

9. Defendant Choice is a Wisconsin corporation and a party to the Merger Agreement. Choice's common stock is traded OTC under the ticker symbol "CBKW."

10. Defendant Rodney R. Oilschlager is Chairman of the Board of the Company.

11. Defendant Arend A. Stam is a director of the Company.

12. Defendant Gerald A. Thiele is a director of the Company.

13. Defendant Mark D. Troudt is a director of the Company.

14. Defendant Kenneth J. Balda is a director of the Company.

15. Defendant Stephen W. Ford is a director of the Company.

16. Defendant Paul R. Getchel is a director of the Company.

17. Defendant Michael L. Hanneman is a director of the Company.

18. Defendant David A. Janssen is a director of the Company.

19. Defendant Thomas L. Muza is a director of the Company.

20. Defendant James G. Poeschl is a director of the Company.

21. Defendant Jeffrey S. Rogge is a director of the Company.

22. Defendant Thomas N. Rusch is a director of the Company.

23. Defendant John F. Supple III is a director of the Company.

24. The defendants identified in paragraphs 10 through 23 are collectively referred to herein as the "Individual Defendants."

25. Defendant Nicolet is a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Choice (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

27.     This action is properly maintainable as a class action.

28.     The Class is so numerous that joinder of all members is impracticable.  As of June 25, 2019, there were approximately 2,729,015 shares of Choice common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

29.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

30.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

31.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

32.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

33.     Choice is a $441 million bank holding company.  The Company's wholly-owned

bank subsidiary, Choice Bank, is a full-service community-oriented commercial bank that was chartered in 2006 and has two branches in Oshkosh, Wisconsin.

34. On June 26, 2019, the Individual Defendants caused the Company to enter into the Merger Agreement with Nicolet.

35. Pursuant to the terms of the Merger Agreement, Choice's stockholders will receive 0.50 shares of Nicolet common stock for each share of Choice common stock they own.

36. According to the press release announcing the Proposed Transaction:

Nicolet Bankshares, Inc. (NASDAQ: NCBS) ("Nicolet") and Choice Bancorp, Inc. (OTC Pink: CBKW) ("Choice") today jointly announce the execution of a definitive merger agreement, pursuant to which Nicolet will acquire Choice and its wholly-owned banking subsidiary, Choice Bank ("Choice Bank"). The move will expand Nicolet's presence in the greater Oshkosh marketplace to the lead-local community bank as measured by deposit market share.

Based on the financial results as of March 31, 2019, the combined company would have pro forma total assets of $3.5 billion, deposits of $2.8 billion and loans of $2.5 billion. . . .

Transaction Information

Under the terms of the merger agreement, Nicolet will acquire Choice with Nicolet being the surviving corporation. In the merger, Choice shareholders shall receive 0.5 share of Nicolet common stock for each share of Choice stock. Based on Nicolet's closing price of $61.13 as of Wednesday, June 26th, the merger consideration is valued at approximately $72.4 million, which excludes Nicolet's pre-existing ownership of Choice shares.

The merger agreement provides for a cap and collar to potentially re-set the exchange ratio or change the mix of consideration should the Nicolet Common Stock Price, as defined in the merger agreement, rise above $67.00 per share, or fall below $55.00 per share.

The estimated transaction value is a 2.0 multiple of Choice's tangible book value as of March 31, 2019 and equates to approximately 15.9x Choice's trailing twelve-month net income through March 31, 2019. Additional assumptions and metrics can be found with the attached Financial Supplement.

Leadership/Employee Information

Post-merger, Scott Sitter will join the management team of Nicolet and will be the Senior Vice President and Commercial Banking Manager of Oshkosh/Fox Valley. The customer-facing employees of Choice are expected to stay on in the same capacity.

Approvals and Closing Date

The transaction has been unanimously approved by the board of directors of both companies. It is subject to Choice shareholder approval, regulatory approvals and other customary closing conditions and is expected to close in the fourth quarter of 2019. Upon consummation of the transaction, both branch offices of Choice Bank are expected to open as Nicolet National Bank branches, while Nicolet's existing branch at 400 N. Koeller Street in Oshkosh is expected to close and consolidate with continued service out of the legacy Choice branches.

Advisors

Bryan Cave Leighton Paisner LLP served as legal counsel to Nicolet in this transaction. Stephens Inc. served as financial advisor and provided a fairness opinion to Choice, and Reinhart Boerner Van Deuren s.c. served as Choice's legal counsel.

***The Registration Statement Omits Material Information***

37. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for October 22, 2019.

38. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction.

39. First, the Registration Statement omits material information regarding Choice's and Nicolet's financial projections.

40. With respect to the Company's financial projections, the Registration Statement fails to disclose projected free cash flows and all underlying line items.

41. The Registration Statement fails to disclose Nicolet's financial projections.

42. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

43. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Stephens Inc. ("Stephens").

44. With respect to Stephens' *Selected Public Companies Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Stephens in the analysis.

45. With respect to Stephens' *Selected Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Stephens in the analysis.

46. With respect to Stephens' *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) Choice's projected free cash flows and all underlying line items; (ii) Stephens' basis for using tangible-common-equity-to-tangible-assets in excess of a target ratio of 8.0% at the end of each projection period for free cash flow; (iii) Stephens' basis for applying multiples ranging from 10.0x to 12.0x to calendar year 2024 net income; (iv) the range of terminal values for Choice; and (v) the individual inputs and assumptions underlying the discount rates ranging from 12.0% to 14.0%.

47. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

48. Third, the Registration Statement omits material information regarding potential conflicts of interest of Stephens.

49. The Registration Statement fails to disclose the amount of Stephens' compensation that is contingent upon the consummation of the Proposed Transaction.

50. The Registration Statement fails to disclose whether Stephens has provided past services to Nicolet or its affiliates, as well as the timing and nature of such services and the amount of compensation Stephens received for providing such services.

51. The Registration Statement fails to disclose the timing and nature of the "financial advisory services" that Stephens provided to "another company that was acquired by Nicolet," and the amount of compensation Stephens has received or will receive for providing the services.

52. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

53. Fourth, the Registration Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company.

54. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

55. Fifth, the Registration Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications.

56. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

57. Sixth, the Registration Statement fails to disclose the terms and values of all indications of interest and proposals submitted to the Company.

58. The Company's stockholders are entitled to an accurate description of the process leading up to the execution of the Merger Agreement.

59. The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; (ii) Reasons for the Merger; (iii) Opinion of Stephens Inc.; (iv) Prospective Financial Information of Choice; and (v) Interests of Certain Persons in the Merger.

60. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Choice's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Choice**

61. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

62. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Choice is liable as the

issuer of these statements.

63. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

64. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

65. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

66. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

67. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

68. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Nicolet

69. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70. The Individual Defendants and Nicolet acted as controlling persons of Choice within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions

as officers and/or Board members of Choice and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

71. Each of the Individual Defendants and Nicolet was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

72. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

73. Nicolet also had supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

74. By virtue of the foregoing, the Individual Defendants and Nicolet violated Section 20(a) of the 1934 Act.

75. As set forth above, the Individual Defendants and Nicolet had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as

controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: September 6, 2019                  **RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
    Brian D. Long (#4347)

**OF COUNSEL:**                              Gina M. Serra (#5387)
                                             300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**                            Wilmington, DE 19801
Richard A. Maniskas                  Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300     Facsimile: (302) 654-7530
Berwyn, PA 19312                       Email: bdl@rl-legal.com
Telephone: (484) 324-6800           Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com             *Attorneys for Plaintiff*